**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------X
ROBERT SCHUYLER WATSON,                          )
individually and on behalf of all others similarly  )
situated,                                        )         ECF CASE
                                                 )
       Plaintiff,                                )         Case No. 06-cv-15212 (JGK)
                                                 )
                                                 )
       -against-                                 )         CLASS ACTION
                                                 )         COMPLAINT
                                                 )
LG PHILIPS LCD COMPANY LTD.;                     )
LG ELECTRONICS USA INC.; PHILIPS                 )         JURY TRIAL
ELECTRONICS NORTH AMERICA                        )         DEMANDED
CORP.; SAMSUNG ELECTRONICS                       )
COMPANY LTD.; SHARP CORP.;                       )
AU OPTRONICS CORP.;                              )
AND JOHN DOES 1-100,                             )
                                                 )
       Defendants.                               )
                                                 )
------------------------------------------------------------X
```

<u>**CLASS ACTION COMPLAINT**</u>

Plaintiffs, individually and on behalf of all others similarly situated, for its Complaint against Defendants, **upon knowledge as to themselves and their own acts, and upon information and belief as to all other matters, allege the following:**

<u>**NATURE OF ACTION**</u>

1.     This Complaint arises from the illegal and anticompetitive conduct of Defendants LG PHILIPS LCD COMPANY LTD., LG ELECTRONICS USA INC., PHILIPS ELECTRONICS NORTH AMERICA CORP., SAMSUNG ELECTRONICS COMPANY LTD., SHARP CORP., and AU OPTRONICS CORP., and JOHN DOES 1-100, (hereinafter referred to as "Defendants") for consumers' purchases of Liquid Crystal Display ("LCD") which use Thin-

Film Transistor ("TFT") technology, (herein known as "TFT LCD") to improve their image quality. This antitrust class action is brought under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, injunctive relief, and the costs of suit, including reasonable attorneys' and experts' fees, for the injuries to the plaintiff and members of the proposed class it represents resulting from defendants' violations of federal antitrust laws, specifically Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, and/or violation of state consumer protection and antitrust laws. The allegations set forth below are based upon information and belief pursuant to the investigation of counsel. The Defendants hold patents to during the relevant class period of December 12, 2002 to the date of the filing of this Complaint.

2.      Defendants, collectively own or control a vast majority share of the market for TFT LCD's that are available for purchase either as stand alone display units (monitors) or in preassembled computers (Laptops) monitor, television, cell phone, PDA, or personal electronic device bought from retailers.

3.      Defendants are excluding competition and maintaining its monopoly over TFT LCD by colluding and conspiring to fix, raise, maintain, and/or stabilize prices paid as by manufacturers of the display units based on the Defendants' specifications. The companies who purchase display units as stand alone or in preassembled units are divided into several categories. The companies who purchase TFT LCD display units for laptop computers are included but not limited to, Apple, Hewlett-Packard, Toshiba, Acer, Dell, and Lenovo. The companies who purchase TFT LCD display units for Desktop monitors are but not limited to, Dell, Gateway, LG Electronics, Philips Electronics, Hewlitt-Packard, and Apple. The companies who purchase display units for flat screen televisions from the Defendants are but not limited to, Philips Electronics, LG Electronics, Toshiba, Hisense, and Matsushita. The final category of companies

who purchase TFT LCD display units are for other various applications are but not limited to, LG Innotech, Seiko Instrument Inc., Shinco, Action Technology, and Noedis. In addition, Defendants are excluding competition and maintaining its monopoly over TFT LCD display units by colluding and conspiring to fix, raise, maintain, and/or stabilize prices paid by TFT LCD display unit resellers. TFT LCD display unit retailers and resellers in turn pass these supra-competitive prices onto consumers.

4.      As a direct result of Defendants' anticompetitive conduct, Plaintiff has paid supra-competitive prices for TFT LCD display units or in preassembled computers, monitors or television sets bought from retailers.

5.      Plaintiff, on their own behalf and on behalf of the class defined below, seek to recover for the injuries to himself for his overpayments to Defendants. The Plaintiff also seek injunctive and declaratory relief and costs, including reasonable attorneys' fees.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action pursuant to 15 U.S.C. §§ 15 and 26, and pursuant to 28 U.S.C. §§ 1331, 1337(a) and 1367. This Court has in personal jurisdiction over each of the Defendants because each was engaged in an illegal price-fixing scheme and conspiracy that was directed at and/or caused injury to persons and entities residing in, located in, or doing business in this District and throughout the United States. For the state law claims the court also has jurisdiction pursuant to 28 USC §1332(d), in that this is a class action in which the matter of controversy exceeds the sum of $5,000,000, exclusive of interest and costs, and which some members of the proposed class are citizens of a different state than of the Defendants.

7.      Venue is proper in this judicial district pursuant to 15 U.S.C. § 22 and 28 U.S.C. §

1391(b) and (c) because some of the defendants reside, or are licensed to do business or are

doing business, or are found or transact business, in this district and/or the claims arose in this

district.

## PARTIES

8.      Plaintiff ROBERT SCHUYLER WATSON ("Plaintiff") is a resident of Vermont.

During the class period, Plaintiff purchased a Gateway CX-200-X laptop computer and paid

artificially inflated prices to Defendants.

9.      Defendant LG PHILIPS LCD COMPANY LTD. ("LG LCD") is a company

located in South Korea and was formed in September 1999 as a 50-50 joint venture between Co-

Defendants LG Electronics and Philips Electronics. The company's primary place of business is

17th Floor, West Tower, LG Twin Towers, 20 Yoido-dong, Youngdungpo-gu, Seoul, Republic of

Korea 150-721. The company sells TFT LCD displays to manufacturers and retailers.

10.      Defendant LG ELECTRONICS USA INC. ("LG") is company with its principal

place of business as 1000 Sylvan Ave., Engelwood Cliffs, NJ. 07632, and is a 50% owner of the

LG PHILIPS LCD COMPANY LTD.

11.      Defendant PHILIPS ELECTRONICS NORTH AMERICA CORP. ("Philips") is a

New York corporation with its principal place of business located in 1251 Avenues of the

Americas, New York, New York, 10020

12.      Defendants LG and Philips entered into a joint venture named LG LCD on or

about September 1999. As a result of the joint venture, all patents and sales of the TFT LCD of

Defendants were transferred to LG LCD.

13.    Defendant's, Samsung Electronics Company Ltd. ("Samsung"), principal place of business is located at 250  2  KA Taepyung RO Chung KG, Seoul, Korea 100742.

14.    Defendant's, Sharp Corp. ("Sharp") principal place of business is located at 22-22 Nagalke-Cho, Abeno Ku, Osaka 545 Japan.

15.    Defendant's, AU Optronics Corp. ("AU Optronics"), 1 Li Hsin Rd 2, Scienc Based Industrial Park, Hsin Chu 300 Taiwan.

16.    Defendant John Does 1-100 are presently not ascertainable by Plaintiffs and are in the exclusive knowledge of the Defendants.  The Complaint in this action will be amended when their true identities are known.

17.    Defendants conduct business throughout the United States including the State of New York and they have purposely availed themselves of the laws of the Indirect Purchaser States as defined herein.

## RELEVANT PRODUCT AND GEOGRAPHIC MARKET

18.    To the extent necessary, the relevant product market is the market for TFT LCD display units sold as flat panel monitors or pre-installed in various computers, flat panel televisions and electronic devices from a retailer and/or display units that were preinstalled in a new unit purchased from a retailer.  The relevant geographic market is the entire United States, and/or the Indirect Purchaser States (as defined below).  At all relevant times, including the present, all Defendants' collective market share in the relevant product and geographic markets is a vast majority of the market share.

## FACTUAL ALLEGATIONS

### A. Background

19.    The TFT LCD industry has it's origin in the computer and television industry. The TFT LCD display unit is a necessary component in a computer and/or television. The TFT LCD display unit is a separate display that is smaller and has a brighter, clearer image than traditional Cathode Ray Tube display units. As the popularity, of more media friendly picture and animations occur, the demands on the clear view thin display units have increased dramatically.

20.    The Defendants are involved in the design and manufacture of these TFT LCD display units. The Defendants then in turn sell the TFT display units to computer manufacturers for use in desktop and laptop monitors. The Defendants also sell the TFT LCD display units to television set manufacturers for production of flat panel and High definition television sets. Finally, the Defendants sell to other manufacturers with place the TFT LCD display units in various electronics devices, such as cell phones, PDA, game consoles and the like.

21.    The TFT LCD display units industry appears to be competitive, but at a closer look some very peculiar items are noticed.  The desktop monitors by LG, Hanns, and Samsung are virtually the same, as a matter of features and abilities, and the price is identical. The examples are taken from a varied range of sizes of monitors for computer uses. Where the type and amount of pixels, refresh speed, connection type are very similar, and the price is identical.

22.    The market for TFT LCD units is in competition with CRT monitors, plasma screen technology. These technologies are not a suitable replacement for the TFT LCD based upon price, availability, compatibility, and picture quality.  Any graphic intensive presentation

that is to be run on a computer, television, or personal electronic device needs a TFT LCD display to have the presentation look and run properly.

23.    Defendants have essentially divided the entire TFT LCD market between themselves, holding a vast majority of the market described. This is done by sales contracts with the manufacturers listed in paragraph 4 above. Additionally, the Defendants have colluded with other TFT LCD manufacturers to maintain artificially supra competitive prices for the TFT LCD display units.

24.    With regular market forces at work consumers should not see the exact price and feature between the three competing companies. In reality, that is exactly what is occurring.

### B. Defendants' Market Share and Consumer Purchases

25.    Currently, the Defendants in conjunction with other manufacturers of TFT LCD display units control a vast majority of the market for sales of flat panel and high definition TFT LCD display units.

26.    The options for purchasing a monitor, television, cell phone, PDA, or personal electronic device the Retailer to purchase the TFT LCD display units from the Defendants or to use the patents that are owned by the Defendants. Because Defendants collectively own a vast majority of the patented video technology available, consumers are virtually unable to purchase TFT LCD display units that do not require a royalty payment or purchase payment to Defendants.

27.    There are numerous Retailers that either allows people to purchase flat panel monitors, laptop computer, television, or personal electronic device. The retailers include but are not limited to Dell, Apple, Hewlitt-Packard, Circuit City, Computer Warehouse, and a multitude of others.

28.    All Retailers must pay the purchase price with royalties included to the Defendants as the Defendants collectively a vast majority of the for TFT LCD display units.

29.    In LG LCD annual Report to the SEC it is stated "We believe that the primary market for TFT-LCD products today includes notebook computers, desktop monitors and televisions. We believe that the TFT-LCD market will continue to expand as consumers are drawn to replace conventional CRT-based display products with TFT-LCD products due to their superior performance features. We believe that the market for TFT-LCD products will also expand in scope as new applications for this technology continue to be designed and developed."

30.    In the relevant Class period, according to LG LCD's SEC annual 2006 report: "Our display panels for notebook computers range from 12.1 inches to 20.1-inch wide-format in size in a variety of display formats. In 2005, our principal products in the notebook computer category were 15.0-inch, 15.4-inch and 17.1-inch panels. Our sales of display panels for notebook computers were (Won)1,739.0 billion, or 28.5% of sales, in 2003, (Won)2,119.1 billion, or 25.5% of sales, in 2004 and (Won)2,113.4 billion (US$2,092.5 million), or 21.0% of sales, in 2005. Notebook computer display panels were our principal product from our formation until 2001, when desktop monitor display panels surpassed notebook computer display panels in terms of revenues. 13.3-inch and 14.1-inch panels accounted for a majority of our notebook computer panel sales in 2000 and 2001. Sales volume for 14.1-inch panels, a product which we first introduced to the market in 1997, continued to increase through 2002, while 15.0-inch panels grew at a faster rate and became the largest component in terms of both sales volume and revenues in the category of notebook computer display panels for 2003, 2004 and 2005."

## C. Price Fixing in the TFT LCD Display Unit and Damages to Consumers

31.     Defendants have conspired and colluded to artificially fix, raise, maintain, and stabilize the royalties charged to consumer of TFT LCD display units, and thus have caused consumers to pay supra-competitive prices for TFT LCD display units.

32.     The Defendants have continually over the class period introduced flat panel monitors and displays with relatively similar features, and even more astonishing a very similar price. This parallel of the Defendants features and prices over time has been remarkably well preserved.

33.     The Defendants accomplish some of this anticompetitive goal by sales agreements, limiting the manufacturers of their respective products. For example, Defendants are excluding competition and maintaining its monopoly over TFT LCD by colluding and conspiring to fix, raise, maintain, and/or stabilize prices paid as by manufacturers of the display units based on the Defendants' specifications. The companies who purchase display units as stand alone or in preassembled units are divided into several categories. The companies who purchase TFT LCD display units for laptop computers are included but not limited to Hewlett-Packard, Toshiba, Acer, Dell, and Lenovo.   The companies who purchase TFT LCD display units for Desktop monitors are included but not limited to Dell, LG Electronics, Philips Electronics, Hewlitt-Packard, and Apple. The companies who purchase display units for flat screen televisions from the Defendants are included but not limited to Philips Electronics, LG Electronics, Toshiba, Hisense, and Matsushita. The final category of companies who purchase TFT LCD display units are for other various applications are including but not limited to LG Innotech, Seiko Instrument Inc., Shinco, Action Technology, and Noedis. In addition, Defendants are excluding competition and maintaining its monopoly over TFT LCD display

9

units by colluding and conspiring to fix, raise, maintain, and/or stabilize prices paid by TFT LCD display unit resellers. TFT LCD display unit retailers and resellers in turn pass these supra-competitive prices onto consumers.

34.    By introducing Flat panel monitors and flat panel and high definition televisions and new personal electronic display units with similar features and same prices, the market forces of competition is to a varying degree extinguished, while only the major players reap the benefits. The consumers are hurt by the slowing of innovation and paying supra-competitive prices for the TFT LCD display units.

35.    As a result of Defendants' voluntary and intentional acts to artificially fix, raise, maintain, and stabilize royalties, consumers have been forced to pay supra-competitive prices that would not have existed for TFT LCD display units.

36.    Further, as a result of Defendants' voluntary and intentional acts to artificially fix, raise, maintain, and stabilize royalties, consumers have been forced to pay supra-competitive prices for TFT LCD Units that were preinstalled for the purchasers of preassembled laptop computers, electronic personal devices and flat panel televisions, as well.

**D.  Investigations and Information Requests into Price Fixing by Defendants**

37.    On December 11, 2006; The Wall Street Journal and Linuxworld.com reported that "On Friday, officials from the Korean Fair Trade Commission visited LG.Philips' offices in Seoul as part of an investigation into possible anticompetitive behavior, LG.Philips said Monday. In addition, the Japanese Fair Trade Commission issued a notice to LG.Philips' offices in Tokyo. and the U.S. Department of Justice issued a subpoena to LG.Philips' offices in San Jose, Calif., the company said."

38.     Also On December 11, 2006, the IDG News Service reported "LG.Philips, a joint venture of LG Electronics and Philips Electronics, is one of the largest makers of LCD screens. It competes with Samsung Electronics Co. Ltd. and Sony Corp., among others."

39.     On December 11, 2006, the US Department of Justice announced subpoenas requesting information from LG LCD regarding anticompetitive practices of the TFT LCD display unit industry.

40.     On December 12, 2006 in a Bloomberg report "Sharp, Japan's largest LCD television maker, said it was contacted last week by Japanese investigators. The Osaka-based company was also contacted by the U.S. Justice Department, spokeswoman Miyuki Nakayama said."

41.     On December 12, 2006 in a report by Resellers news "Samsung says it had been served with subpoenas by regulators in the US, South Korea and Japan, while Sharp and Taiwan's AU Optronics were contacted by the Japan Fair Trade Commission and the US Department of Justice (DOJ), they say. Taiwan's Chi Mei Optoelectronics says a subsidiary in the US was also contacted by the DOJ."

42.     On December 12, 2006 in a Bloomberg report "Samsung Electronics Co. and LG.Philips LCD Co., the world's largest makers of liquid-crystal displays, are being probed by regulators in the U.S., South Korea, Japan and Europe for alleged price fixing in the $69 billion industry."

## PLAINTIFF'S INJURY

43.     Plaintiff and the Class members (defined below) have been damaged as a direct, foreseeable, and proximate result of Defendants' misconduct. There are virtually no choices for consumers who require a TFT LCD display unit other than buying from Retailers who must pay

11

royalties and artificially inflated purchase price to the Defendants because of Defendants' collective market share. Plaintiff and the Class members have been forced to pay supra-competitive prices for TFT LCD display units, which has unjustly enriched Defendants. As a further result of Defendants' misconduct and anti-competitive behavior Plaintiff and the Class members have been forced to pay supra-competitive prices for TFT LCD display units installed on pre-built computers, flat panel televisions, flat screen computer monitors, cell phones, PDA's and personal game consoles from retailers.

## CLASS ACTION ALLEGATIONS

44.     The Class Period is December 12, 2002 to the date of the filing of this Complaint.

45.     Plaintiff brings this action as a Class action pursuant to Federal Rule of Civil Procedure 23(b)(3), on behalf of a Class consisting of: all persons or entities who purchased a TFT LCD display unit from a Retailer, or pre-built computers, flat panel televisions, flat screen computer monitors, cell phones, PDA's and personal game consoles from retailers installed at time of purchase from a retailer in the United States and/or Indirect Purchaser States (defined below), or the consumer fraud states (defined below) during the Class Period. The Class excludes Defendants, any co-conspirators and their parents, subsidiaries, affiliates, officers, directors, and employees. Also excluded, are any federal, state, or local governmental entity, and any judge or judicial officer presiding over this matter, judicial staff and the members of their immediate families.

46.     For purposes of the Complaint and class definition, the "Indirect Purchasers States" are Alaska, Arizona, Arkansas, California, the District of Columbia, Florida, Idaho, Iowa, Kansas , Maine, Michigan, Montana, Minnesota, Mississippi, Nebraska, Nevada, New

Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

47.    For purposes of the Complaint and class definition, the "Consumer Fraud States" are Alaska, Arkansas, California, the District of Columbia, Florida, Idaho, Maine, Montana, Nebraska, Nevada, New Hampshire,  New Mexico, North Carolina, North Dakota, Utah, Vermont, and West Virginia.

48.    The Class is so numerous that joinder of all members is impracticable. Due to the nature of the trade and commerce involved, the members of the Class are geographically dispersed throughout the Indirect Purchaser States. While the exact number of the members of the Class is unknown to Plaintiffs at this time, Plaintiffs believe, based on the TFT LCD display units installed and purchased as well as Defendants' market share, that there are hundreds of thousands or more members of the Class.

49.    Plaintiff's claims are typical of the claims of the other members of the Class it seeks to represent. Defendants' illegal and inequitable methods, acts, and trade practices have targeted and affected all members of the Class in a similar manner, *i.e.*, they have been overpaying for TFT LCD display units because of the collusion of Defendants in setting prices for purchases of the TFT LCD units by retailers and assemblers in royalties in the marketplace for TFT LCD display units, and consumers will continue to pay supra-competitive prices until the conduct of Defendants is ceased.   Plaintiff and members of the Class it seeks to represent have all sustained damages arising out of Defendants' conduct in violation of the Indirect Purchaser States laws, the Sherman Antitrust Act, and Consumer Protection States laws, as complained of herein.

50.    Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class.  Among the questions of law and fact common to the Class are:

(a) Whether the alleged conduct violated the Indirect Purchaser States laws concerning antitrust as alleged in Count II of this Complaint;

(b) Whether the alleged conduct violated the Consumer Fraud State's laws on consumer protection as alleged in Count III;

(c) Whether the alleged conduct violated the Sherman and Clayton Act as alleged in Count I;

(d) Whether Plaintiff and the Class have a claim for unjust enrichment;

(e) The duration and extent of any such violations or unlawful conduct alleged herein;

(f) The amount by which Defendants' illegal, inequitable, and unfair trade   practices have inflated the prices paid by members of the Class for TFT LCD display units over the amounts they would have paid in a competitive market unaffected by Defendants' illegal acts; and

(g) Whether Defendants' conduct caused injury to Plaintiffs and the Class members it seeks to represent and, if so, the proper measure of damages.

51.    Plaintiff's claims are typical of those of the Class it represents because it and all of the Class members were injured and continue to be injured in the same manner by Defendants' illegal and unfair methods, acts, and practices and wrongful conduct in the conspiracy complained of herein, *i.e.*, they have paid and continue to pay supra-competitive prices, until the market for TFT LCD display units is truly competitive.

52.     Plaintiff will fully and adequately protect the interests of all members of the Class. Plaintiff has retained counsel who is experienced in class action and antitrust litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class.

53.     The questions of law and fact common to the members of the Class predominate over any questions which may affect only individual members.

54.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts, and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

55.     The interest of members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class has a high degree of cohesion, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the individual class members may be relatively small; and therefore, the expense and burden of individual litigation make it virtually impossible for them to redress the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

## FRAUDULENT CONCEALMENT

56.     The running of any Statute of Limitations has been suspended with respect to any claims which the Plaintiffs and other members of the Class have sustained as a result of the unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive

relief by virtue of the federal doctrine of fraudulent concealment. Defendants through various devices and techniques of secrecy affirmatively and fraudulently concealed the existence of the unlawful combination and conspiracy alleged herein.

## COUNT I

## VIOLATION OF SECTION 1 OF THE SHERMAN ANTITRUST ACT AND SECTION 4 OF THE CLAYTON ACT

57.     Plaintiff incorporates by reference the allegations above.

58.     Defendants and the un-named conspirators entered into and engaged in a contract, combination, or conspiracy in an unreasonable restraint of trade in violation of the Section 1 of the Sherman Act and Section 4 of the Clayton Act.

59.     The contract, combination, or conspiracy alleged herein has resulted in an agreement or concerted action among the Defendants and their un-named conspirators whereby as a result of these actions surcharges and prices charged for air cargo services were fixed, maintained, and standardized.  The alleged contract, combination, or conspiracy is a per se violation of federal antitrust laws and is at a minimum an unreasonable and unlawful restraint of trade.

60.     As result of defendants' unlawful conduct, plaintiff has suffered damage by paying supra-competitive prices that they would not have had to incur but for the unlawful conduct of defendants as alleged herein.

## COUNT II

### Violation of State Antitrust Statutes

61.     Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

16

62.     Defendant's intentional and purposeful anti-competitive acts that are described above, including but not limited to collusion to set prices and the actual act of price fixing caused and was intended to cause Plaintiff to pay supra-competitive prices for TFT LCD display units in the Indirect Purchaser States.

63.     Defendants' monopolistic and anticompetitive acts as described above are in violation of the following state antitrust statutes:

64.     Defendants have violated Arizona Revised Statutes § 44-1403.

65.     Defendants have violated California Business & Professions Code § 16700, *et. seq.*

66.     Defendants have violated District of Columbia Code § 28-4503.

67.     Defendants have violated Florida Statutes § 542.19.

68.     Defendants have violated Iowa Code § 553.5.

69.     Defendants have violated Kansas Statutes § 50-101.

70.     Defendants have violated Maine Revised Statutes, Title 10 § 1102.

71.     Defendants have violated Michigan Compiled Laws § 445.773.

72.     Defendants have violated Minnesota Statutes § 325D.52.

73.     Defendants have violated Mississippi Code § 75-21-1, *et seq.*

74.     Defendants have violated Nevada Revised Statutes § 598A.060.

75.     Defendants have violated New Jersey Statutes § 56:9-4.

76.     Defendants have violated New Mexico Statutes § 57-1-2.

77.     Defendants have violated New York General Business Law § 340, *et. seq.*

78.     Defendants have violated North Carolina General Statutes § 75-2.1.

79.     Defendants have violated North Dakota Century Code § 51-08.1-03.

80.    Defendants have violated South Dakota Codified Laws § 37-1-3.2.

81.    Defendants have violated Tennessee Code § 47-25-101, *et. seq.*

82.    Defendants have violated Vermont Statutes, Title 9, § 2453.

83.    Defendants have violated West Virginia Code § 47-18-4.

84.    Defendants have violated Wisconsin Statutes § 133.03.

85.    Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial. Plaintiff and the Class seek treble damages pursuant to the Indirect Purchaser States antitrust laws as stated above where they are allowed.

86.    Defendants' willful and unlawful conduct allow Plaintiff and the Class to seek attorneys' fees in the Indirect Purchaser States where they allowed by law. Plaintiff and the Class seek attorneys' fees where they are allowed by law.

### COUNT III

#### Violation of State Consumer Protection Statutes

87.    Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect, as if fully restated herein.

88.    The deceptive practices of the Defendants as alleged above included but are not limited to collusion between Defendants in setting prices and actual price fixing with the intended purpose to maintain supra-competitive pricing in the TFT LCD display unit (all unknown to the general consumer public). Defendants' deceptive and anti-competitive conduct resulted in higher consumer prices for TFT LCD display units because of supra-competitive pricing by Defendants.

89.    Defendants' acts as described above are in violation of the following state Consumer Protection statutes:

18

90.    Defendants have violated Alaska Statutes § 45.50.471, *et seq.*

91.    Defendants have violated Arkansas Code § 4-88-101, *et seq.*

92.    Defendants have violated California Business & Professions Code § 17200, *et. seq.*

93.    Defendants have violated District of Columbia Code § 28-3901.

94.    Defendants have violated Florida Statutes § 501.201.

95.    Defendants have violated Idaho Code § 48-601.

96.    Defendants have violated Maine Revised Statutes, Title 5 § 207, *et seq.*

97.    Defendants have violated Montana Code § 30-14-101, *et seq.*

98.    Defendants have violated Nebraska Revised Statutes § 59-1601, *et seq.*

99.    Defendants have violated Nevada Revised Statutes § 598.0903, *et seq.*

100.    Defendants have violated New Hampshire Revised Statutes § 358-A:1, *et seq.*

101.    Defendants have violated New Mexico Statutes § 57-12-1, *et. seq.*

102.    Defendants have violated North Carolina General Statutes § 75-1.1, *et. seq*

103.    Defendants have violated Utah Code § 13-11-1, *et. seq.*

104.    Defendants have violated Vermont Statutes, Title 9, § 2451, *et. seq.*

105.    Defendants have violated West Virginia Code § 46A-6-101, *et seq.*

106.    Plaintiff and the Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial.

107.    Defendants' willful and unlawful conduct allow Plaintiffs and the Class to seek attorneys' fees in the Consumer Fraud States where they allowed by law. Therefore, Plaintiffs and the Class seek attorneys' fees where they are allowed by law.

## COUNT IV

### Unjust Enrichment

108.    Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

109.    Defendants benefited greatly from overpayments caused directly from their unlawful and anti-competitive acts as described above for purchase price and royalties on TFT LCD display units.  It would be inequitable for Defendants to retain the benefit of these overpayments that were conferred by Plaintiff and the Class.

110.    Plaintiff and the Class are entitled to return of these overpayments caused by the willful acts of the Defendants either as damages or restitution.

## COUNT V

### Common Law Restraint of Trade for Class Members For State of New York only

111.    Plaintiff re-alleges and incorporates by reference all of the allegations of this Complaint with the same force and effect as if fully restated herein.

112.    Defendants have a vast majority of worldwide and New York market share of patents and amount of sales for TFT LCD display units.

113.    Defendants have maintained its monopoly in the State of New York over the TFT LCD display units market through a series of purposeful and intentional acts since at least December 11, 2002.

114.    These intentional acts included but are not limited to artificially fixing, raising, maintaining, and stabilizing the prices paid by TFT LCD display units Retailers and the prices paid by TFT LCD display units resellers.

115.    The intentional and unlawful acts of Defendants were designed to and actually caused Defendants to artificially fix, raise, maintain, and stabilize prices of TFT LCD display units within the State of New York.

116.    As proximately and directly caused by Defendants' intentional and unlawful acts to restrain trade in the TFT LCD display units markets, Plaintiff had to pay supra-competitive prices for TFT LCD display units, when it purchased from Retailers or from resellers.

117.    Plaintiff and the Class seek actual damages in an amount to be determined at trial for injuries suffered as a result of the allegations stated herein.

## DEMAND FOR JURY

Pursuant to Federal Rule of Civil Procedure 38(b) and otherwise, plaintiff respectfully demands a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff and the Class request as follows:

(a)    that this Court declare, adjudge, and decree this action to be a proper class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

(b)    that this Court declare, adjudge, and decree that Defendants have committed violations of the Sherman Antitrust Act and the Clayton Act as alleged herein;

(c)    that this Court declare, adjudge, and decree that Defendants have committed violations of state antitrust and consumer protection laws alleged herein;

(d)    that this Court declare, adjudge, and decree that Defendants have committed violations of New York common law restraint of trade alleged herein;

21

(e)     that this Court award Plaintiff and the Class their actual damages for Defendants' restraint of trade or commerce pursuant to New York common law, in an amount to be determined at trial;

(f)     that this Court award Plaintiff and the Class treble damages for Defendants' violation of Indirect Purchaser States' antitrust laws in an amount to be determined at trial;

(g)     that this Court award Plaintiff and the Class their actual damages for Defendants' violation of Consumer Protection Statutes, in an amount to be determined at trial;

(h)     that this Court grant Plaintiff and the Class the actual costs in prosecuting this action, together with interest and reasonable attorney's fees and costs;

(i)     that this Court award Plaintiff and the Class the return of overpayments made by them for Defendants' TFT LCD display units;

(j)     that this Court grant such further and other relief as this Court deems just and proper.

DATED: New York, New York
           December 15, 2006

LOVELL STEWART HALEBIAN LLP

By:_____
Christopher Lovell (CL-2595)
Imtiaz Siddiqui (IS-4090)
Craig M. Essenmacher
Keith Essenmacher
500 Fifth Avenue, Floor 58
New York, New York 10110
(212) 608-1900

Dennis J. Johnson, Esq.
JOHNSON & PERKINSON
1690 Williston Road
P.O. Box 2305
South Burlington, Vermont 05403
(802) 862-0030

22